**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

Civil Action No.: 3:22-cv-235-FDW-DCK

| | |
|---|---|
| FINANCIAL INDEPENDENCE GROUP, LLC, | |
| Plaintiff, | |
| vs. | **AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANTS JOSHUA GENTRY, EPIK ADVISORS, LLC, AND ASHLEY KILMARTIN** |
| JOSHUA GENTRY, in his personal capacity; EPIK ADVISORS, LLC; and ASHLEY KILMARTIN, in her personal capacity, | |
| Defendants. | |

**COME NOW** Defendants Joshua Gentry ("Gentry"), Epik Advisors, LLC ("Epik"), and Ashley Kilmartin ("Kilmartin") by and through the undersigned counsel, and amending their Answer pursuant to Rule 15 of the Federal Rules of Civil Procedure for Gentry and Epik to assert Counterclaims against Plaintiff Financial Independence Group, LLC, pursuant to Rule 13 of the Federal Rules of Civil Procedure, state as follows:

**ANSWER TO ENUMERATED PARAGRAPHS**

1.     Answering Paragraph 1, it is admitted that Gentry formerly was a Senior Vice President with Plaintiff and led "Team Gentry." The terms "high earner" and "confidential information" are not defined or qualified in any way and Defendants therefore lack information sufficient to admit or deny the allegations regarding those terms. Accordingly, Defendants deny those allegations. The remainder of Paragraph 1 is denied.

2.      Answering Paragraph 2, it is admitted that Gentry resigned his employment with Plaintiff on or around August 20, 2020.  Paragraph 2 is denied to the extent that it characterizes Gentry's motivations or suggests that Gentry has violated any obligations to Plaintiff.  The remainder of Paragraph 2 is denied.

3.      Answering Paragraph 3, it is admitted that the parties entered into a Settlement Agreement, which speaks for itself and is the best evidence of its contents.  The remainder of Paragraph 3 is denied, in that Plaintiff did not attempt to reach an amicable resolution, considering that it has filed this lawsuit without following the mandatory procedures set out in the parties' Settlement Agreement.

4.      Paragraph 4 is denied.

5.      Answering Paragraph 5, it is admitted that Kilmartin is a former Sales Associate with Plaintiff and member of "Team Gentry," and that Kilmartin is an employee of Epik.  Paragraph 5 is denied to the extent it suggests that Gentry or Kilmartin took any actions in violation of contractual obligations, and it is further denied that Kilmartin's employment was terminated for the reasons stated.

6.      Paragraph 6 is denied.

7.      Answering Paragraph 7, it is admitted that Kilmartin signed such an agreement, which speaks for itself and is the best evidence of its contents.  Except as admitted, Paragraph 7 is denied.

8.      Paragraph 8 is denied.

9.      Paragraph 9 sets forth Plaintiff's characterization of the lawsuit, and is in that sense a legal conclusion to which no response is required.  To the extent any response to Paragraph 9 is required, Defendants deny Plaintiff's characterization of the referenced

agreements, which speak for themselves, and deny violating such agreements.

10.    Defendants lack sufficient information to admit or deny the allegations of Paragraph 10, and therefore deny them.

11.    Paragraph 11 is admitted.

12.    Paragraph 12 is admitted.

13.    Paragraph 13 is admitted.

14.    Paragraph 14 is admitted.

15.    Paragraph 15 states a legal conclusion to which no response is required; to the extent a response is required, Gentry does not contest personal jurisdiction, but denies Plaintiff's characterization of his obligations under the Settlement Agreement, which document speaks for itself. To the extent any further response is required, Paragraph 15 is denied.

16.    Paragraph 16 states a legal conclusion to which no response is required; to the extent a response is required, Kilmartin does not contest personal jurisdiction, but denies Plaintiff's characterization of her obligations under the Kilmartin Agreement, which document speaks for itself. To the extent any further response is required, Paragraph 16 is denied.

17.    Answering Paragraph 17, it is admitted that the referenced contracts, which speak for themselves, provide for jurisdiction in Mecklenburg County, North Carolina. Except as admitted, Paragraph 17 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny Plaintiff's characterization of the obligations of Gentry and Kilmartin under the referenced agreements, which speak for themselves.

18.    Paragraph 18 states a legal conclusion to which no response is required; to the extent a response is required, Defendants do not contest that venue is proper, lack information sufficient to admit or deny the remaining allegations of this Paragraph, and therefore deny them.

3

19.     Answering Paragraph 19, it is admitted that the referenced agreements provide for North Carolina law to govern, with the caveat that the agreements speak for themselves and are the best evidence of their contents.  Except as admitted, Paragraph 19 is denied.

20.     Paragraph 20 is admitted.

21.     Paragraph 21 is admitted.

22.     Paragraph 22 is admitted.

23.     Paragraph 23 is admitted.

24.     Paragraph 24 is admitted.

25.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 25, and therefore deny them.

26.     Paragraph 26 is admitted.

27.     Paragraph 27 is admitted.

28.     Paragraph 28 is admitted.

29.     Paragraph 29 is admitted, with the caveat that the referenced agreement speaks for itself and is the best evidence of its contents.

30.     Paragraph 30 is admitted, with the caveat that the referenced agreement speaks for itself and is the best evidence of its contents.

31.     Paragraph 31 is admitted, with the caveat that the referenced agreement speaks for itself and is the best evidence of its contents.

32.     Answering Paragraph 32, it is admitted that the Schedule C Agreement is a document that speaks for itself.  Paragraph 32 is denied to the extent that it attempts to characterize the sufficiency of consideration as to the Schedule C Agreement, and the remainder of Paragraph 32 is denied.

33.     Paragraph 33 is admitted, with the caveat that the referenced agreement speaks for itself and is the best evidence of its contents.

34.     Paragraph 34 is admitted.

35.     Answering Paragraph 35, it is admitted that Exhibit 3 to the Complaint was signed and speaks for itself.  Paragraph 35 is denied to the extent Plaintiff seeks to characterize or interpret the referenced document, and the remainder of Paragraph 35 is denied.

36.     Answering Paragraph 36, it is admitted that the referenced document speaks for itself and is the best evidence of its contents.  To the extent that the content of Paragraph 36 varies from the referenced document, it is denied.

37.     Paragraph 37 is denied.

38.     Paragraph 38 is denied.

39.     Paragraph 39 is denied.

40.     Paragraph 40 is denied.

41.     Answering Paragraph 41, it is admitted that the parties had various settlement negotiations.  The remainder of Paragraph 41 is denied, in that it suggests Plaintiff "attempted to resolve" the disputes, given that Plaintiff later filed this lawsuit contrary to the procedures set out in the parties' settlement agreement, indicating that Plaintiff had no intention of resolving disputes, and to the extent that it suggests Gentry was in "breach" of any of his obligations.

42.     Answering Paragraph 42, it is admitted that settlement discussions continued. The remainder of Paragraph 42, including without limitation allegations regarding the timing of the "launch" of Epik, LLC, and Epik, is denied.

43.     Paragraph 43 is admitted.

44.     Answering Paragraph 44, it is admitted that the referenced Settlement Agreement

5

is a document that speaks for itself and is the best evidence of its contents. Paragraph 44 is denied to the extent that it varies from the express language of the referenced Settlement Agreement, and to the extent it provides Plaintiff's legal interpretation of the parties' obligations.

45.     Answering Paragraph 45, it is admitted that the referenced Settlement Agreement is a document that speaks for itself and is the best evidence of its contents. Paragraph 45 is denied to the extent that it varies from the express language of the referenced Settlement Agreement, and to the extent it provides Plaintiff's legal interpretation of the parties' obligations.

46.     Answering Paragraph 46, it is admitted that the referenced Settlement Agreement is a document that speaks for itself and is the best evidence of its contents. Paragraph 46 is denied to the extent that it varies from the express language of the referenced Settlement Agreement, and to the extent it provides Plaintiff's legal interpretation of the parties' obligations.

47.     Answering Paragraph 47, it is admitted that the referenced Settlement Agreement is a document that speaks for itself and is the best evidence of its contents, and that it contains mandatory provisions that the parties must follow prior to initiating a lawsuit. Further answering Paragraph 47, it is denied that the Plaintiff followed the referenced mandatory provisions prior to instituting this action. The remainder of Paragraph 47 is denied.

48.     Answering Paragraph 48, it is admitted that James Mark Truttman potentially qualifies as a "Buyout Customer," only assuming no timely cure as contemplated by the parties' Settlement Agreement. Further answering Paragraph 48, it is denied that there was an attempt to "cover up" any transaction, and Paragraph 48 is denied to the extent it insinuates that Gentry has failed to cure any alleged violation of the agreement. The remainder of Paragraph 48 is denied.

49.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 49, and therefore deny them.

50.     Answering Paragraph 50, Defendants lack sufficient information to admit or deny the allegations of this Paragraph as to what Plaintiff purportedly learned, when Plaintiff purportedly learned it, or what Plaintiff purportedly "confirmed," and therefore Defendants deny these allegations for lack of knowledge or information sufficient to form a belief.

51.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 51, and therefore deny them.

52.     Answering Paragraph 52, it is admitted that Jeff Juniper would potentially qualify as a "Buyout Customer," but Paragraph 52 is denied to the extent that the term suggests any obligation owed by any Defendant with regard to Mr. Juniper.

53.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 53, and therefore deny them.

54.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 54, and therefore deny them.

55.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 55, and therefore deny them.

56.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 56, and therefore deny them.

57.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 57, and therefore deny them.

58.     Paragraph 58 is denied.

59.     Paragraph 59 is denied.

60.     Paragraph 60 is denied.

61.     Defendants lack sufficient information to admit or deny the allegations of

7

Paragraph 61, and therefore deny them.

62.     Answering Paragraph 62, it is admitted that the Geigers would potentially qualify as a "Buyout Customer," but Paragraph 62 is denied to the extent that the term suggests any obligation owed by any Defendant with regard to the Geigers.

63.     Paragraph 63 is denied.

64.     Paragraph 64 is denied.

65.     Paragraph 65 is denied.

66.     Paragraph 66 is denied.

67.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 67, and therefore deny them.

68.     Answering Paragraph 68, it is admitted that Gary Mastrodonato would potentially qualify as a "Buyout Customer," but Paragraph 68 is denied to the extent that the term suggests any obligation owed by any Defendant with regard to Mr. Mastrodonato.

69.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 69, and therefore deny them.

70.     Paragraph 70 is denied.

71.     Answering Paragraph 71, Defendants admit a letter was sent on the referenced date, which document speaks for itself and is the best evidence of its contents.  Further answering Paragraph 71, it is specifically denied that Gentry violated the agreement, and Paragraph 71 is denied to the extent that it provides Plaintiff's legal characterization of the parties' obligations.

72.     Answering Paragraph 72, it is admitted that the referenced letter is a document that speaks for itself and is the best evidence of its contents.  Further answering Paragraph 72, it is specifically denied that Gentry violated the agreement, and Paragraph 72 is denied to the extent

that it provides Plaintiff's legal characterization of the parties' obligations.

73.     Answering Paragraph 73, it is admitted that Exhibit 6 is a document that speaks for itself and is the best evidence of its contents, and that any alleged breach of the agreement was cured as provided for by the parties' Settlement Agreement.  Paragraph 73 is denied to the extent it suggests that the referenced letter only "purported to" cure the alleged breach of the agreement, or otherwise provides Plaintiff's legal characterization of the parties' obligations.

74.     Answering Paragraph 74, it is admitted that Exhibit 7 is a document that speaks for itself and is the best evidence of its contents.  Further answering Paragraph 74, it is denied that the actions of Gentry, following the specific procedure set forth in the parties' Settlement Agreement, failed to cure any alleged breach of the agreement.

75.     Answering Paragraph 75, it is admitted that Exhibit 8 is a document that speaks for itself and is the best evidence of its contents.  Except as admitted, Paragraph 75 is denied.

76.     Answering Paragraph 76, it is admitted that Exhibit 9 is a document that speaks for itself and is the best evidence of its contents.  Paragraph 76 is denied to the extent it suggests Gentry had failed to cure any alleged breach of the agreement or that his further response by December 2, 2021, was required, given that Plaintiff had not timely sought mediation in response to the notice of cure provided by Gentry in September 2021.  Moreover, Paragraph 76 is further denied to the extent it omits, and thus selectively characterizes, subsequent communications between the parties' counsel.

77.     Answering Paragraph 77, it is admitted there were communications between counsel as generally described.  However, Paragraph 77 is denied to the extent it suggests that Plaintiff followed the procedures required by the parties' Settlement Agreement.

78.     Answering Paragraph 78, it is admitted that no Buyout Payment has been made

and that no such payment is required. The remainder of Paragraph 78 is denied, in that it suggests the parties have been "unable to resolve" this dispute, given that Plaintiff has not followed the mandatory pre-suit procedures set forth in the Settlement Agreement, and to the extent it suggests that any Buyout Payment is required given Gentry's cure of the alleged breach of the Settlement Agreement.

79. Paragraph 79 is denied.

80. Paragraph 80 is denied.

81. Paragraph 81 is denied.

82. Paragraph 82 is admitted.

83. Answering Paragraph 83, it is admitted that Kilmartin had personal contacts with various customers and prospective customers of Plaintiff. Defendants lack information sufficient to admit or deny the remaining allegations of Paragraph 83, in that it contains a vague reference to undefined purported "trade secrets and confidential and proprietary information" of Plaintiff, and Defendants therefore deny them.

84. Paragraph 84 is admitted.

85. Answering Paragraph 85, it is admitted that the referenced document speaks for itself and is the best evidence of its contents. To the extent that the content of Paragraph 85 varies from the referenced document, it is denied.

86. Answering Paragraph 86, it is admitted that the referenced document speaks for itself and is the best evidence of its contents. To the extent that the content of Paragraph 86 varies from the referenced document, it is denied.

87. Answering Paragraph 87, it is denied that Kilmartin's employment with Plaintiff was terminated "as a result of a lack of work," and it is admitted that Kilmartin began working

for Epik after Plaintiff had fired her. The remainder of Paragraph 87 is denied.

88.     Answering Paragraph 88, it is admitted that such a letter was sent, which document speaks for itself and is the best evidence of its contents. To the extent that the content of Paragraph 88 varies from the referenced document, it is denied.

89.     Paragraph 89 is denied.

90.     Paragraph 90 is denied.

91.     Paragraph 91 is denied.

92.     Paragraph 92 is denied.

93.     Defendants re-state and re-incorporate the answers to the preceding paragraphs 1-92 as if more fully set forth herein. Except as admitted, Paragraph 93 is denied.

94.     Paragraph 94 is denied, in that this Paragraph provides Plaintiff's selective and self-serving characterization of the referenced parties' legal obligations, and the referenced documents speak for themselves.

95.     Answering Paragraph 95, it is admitted that the referenced parties reached a Settlement Agreement, which is a document that speaks for itself and is the best evidence of its contents. The remainder of Paragraph 95 is denied to the extent it seeks to characterize the legal effect of the parties' agreement.

96.     Paragraph 96 is denied, in that this Paragraph provides Plaintiff's selective and self-serving characterization of the referenced parties' legal obligations, and the referenced documents speak for themselves.

97.     Paragraph 97 states a legal conclusion to which no response is required. To the extent a response is required, Defendants do not contest that the Settlement Agreement is valid and enforceable, but affirmatively allege that Plaintiff has failed to follow the terms thereof.

98.     Paragraph 98 is denied.

99.     Paragraph 99 is denied.

100.    Paragraph 100 is denied.

101.    Paragraph 101 is denied.

102.    Paragraph 102 is denied.

103.    Paragraph 103 is denied.

104.    Paragraph 104 is denied.

105.    Paragraph 105 is denied.

106.    Defendants re-state and re-incorporate the answers to the preceding Paragraphs 1-105 as if more fully set forth herein.  Except as admitted, Paragraph 106 is denied.

107.    Paragraph 107 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants do not dispute that the agreement was a valid offer but otherwise deny Plaintiff's legal characterization of the parties' obligations.  To the extent any further response is required, Paragraph 107 is denied.

108.    Paragraph 108 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants do not dispute that there was an acceptance but otherwise deny Plaintiff's legal characterization of the parties' obligations. To the extent any further response is required, Paragraph 108 is denied.

109.    Paragraph 109 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants do not dispute that there was consideration supporting the agreement, but otherwise deny Plaintiff's legal characterization of the parties' obligations. To the extent any further response is required, Paragraph 109 is denied.

110.    Paragraph 110 states a legal conclusion to which no response is required.  To the

extent a response is required, Defendants do not dispute that there was a meeting of the minds but otherwise deny Plaintiff's legal characterization of the parties' obligations. To the extent any further response is required, Paragraph 110 is denied.

111.     Paragraph 111 states a legal conclusion to which no response is required. To the extent a response is required, Defendants do not dispute the existence of the referenced document, but otherwise deny Plaintiff's legal characterization of the parties' obligations, the document, or the enforceability of any of the terms therein.

112.     Paragraph 112 is denied.

113.     Paragraph 113 is denied.

114.     Paragraph 114 is denied.

115.     Paragraph 115 is denied.

116.     Defendants deny each and every allegation in Plaintiff's Complaint, except as expressly admitted or otherwise stated above.

117.     In response to Plaintiff's prayer for relief, Defendants deny that Plaintiff is entitled to any of the relief from or in connection with its Complaint, and pray that the Court enter judgment in Defendants' favor as to both Counts; order that the Plaintiff take nothing; award Defendants their reasonable attorney's fees, costs, and expenses; and order such other and further relief as the Court deems just and proper.

## <u>SEPARATE AFFIRMATIVE DEFENSES</u>

### <u>FIRST AFFIRMATIVE DEFENSE</u>

Any performance of any Defendants pursuant to any alleged agreement was excused by Plaintiff's prior breach of any such agreement.

13

## SECOND AFFIRMATIVE DEFENSE

Defendants plead all applicable statutes of limitation in bar, in whole or in part, to recovery by Plaintiff.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, based on the doctrines of unclean hands, waiver, laches, and estoppel.

## FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is entitled to any monetary relief from any of the Defendants, which Defendants deny, then any such relief is limited by applicable setoff, offset, and/or recoupment; and Defendants plead that they are entitled to a credit, offset, and/or recoupment from Plaintiff in bar of and as an affirmative defense to the claims for relief sought by Plaintiff in this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff has failed to meet and satisfy its obligation of good faith and fair dealing inherent in any and all agreements with any Defendants, and has thereby waived and should be estopped from asserting any claim against any of the Defendants. Defendants plead the foregoing breach of the implied duty of good faith and fair dealing in bar of and as an affirmative defense to the claims for relief sought by Plaintiff in this action.

## SIXTH AFFIRMATIVE DEFENSE

If it should be determined that any of the Defendants were obligated to provide any cure opportunity to Plaintiff that was not provided, which has been and is again denied, then Defendants assert that any such opportunity would have been futile. Defendants therefore plead futility in bar of and as an affirmative defense to the Plaintiff's claims and action herein.

14

Plaintiff's claim for punitive damages is barred in whole or in part by limitations on punitive damages set out in N.C. Gen. Stat. §§ 1D-1, *et seq.* Plaintiff knows or should know that its claim for punitive damages is, in whole or in part, frivolous and malicious, and Defendants are therefore entitled to have their reasonable attorneys' fees taxed against Plaintiff pursuant to N.C.G.S. § 1D-45.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent that that Plaintiff has failed to mitigate its damages, its claims are so barred.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by failure of a condition or conditions precedent.

## TENTH AFFIRMATIVE DEFENSE

Defendants expressly reserve any additional and further defenses as may be revealed during discovery or upon receipt of additional information.

## **COUNTERCLAIMS**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants Joshua Gentry ("Gentry") and Epik Advisors, LLC ("Epik"), by and through counsel, for their Counterclaims against the Plaintiff Financial Independence Group, LLC ("FIG"), state as follows:

## THE PARTIES

1.      Gentry is a citizen and resident of the State of Kansas, with a current address of 326 Dean Court, Lawrence, KS 66049.

2.      Epik is a Kansas limited liability company, formed on or around October 9, 2020, with a registered address of 326 Dean Court, Lawrence, KS 66049.  Gentry is the registered agent for Epik.

3.      Upon information and belief, FIG is a North Carolina limited liability company with its principal place of business in Cornelius, North Carolina, with its principal office and registered address located at 19520 W. Catawba Ave., Suite 200, Cornelius, NC 28031.

<u>VENUE AND JURISDICTION</u>

4.      This Court has subject matter jurisdiction over the Counterclaims asserted in this action under: (i) the private enforcement provisions of the Clayton Act, 15 U.S.C. §§ 15 and 16, for damages against FIG in violation of Section 2 of the Sherman Act (15 U.S.C. § 2); and (ii) 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. §§ 15 and 16.

5.      This Court also has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367, because the Counterclaims herein form part of the same case or controversy as alleged in FIG's Complaint, as well as the causes of action that arise under the laws of the State of North Carolina, particularly the Unfair and Deceptive Trade Practices Act under Chapter 75 of the North Carolina General Statutes.  N.C. Gen. Stat. §§ 75-1.1, *et seq.*

6.      This Court has personal jurisdiction over FIG because FIG has its principal place of business in the State of North Carolina.

7.      Venue is proper in this Court pursuant to 15 U.S.C. §§ 22 and 26 and 28 U.S.C. §§ 1391(b) and (d), because the unlawful practices of FIG are alleged to have been committed in this District, FIG regularly conducts business in this District, and FIG has its principal place of business in this District.

16

<u>FACTS COMMON TO ALL COUNTS</u>

8.     Gentry began working as a Senior Vice President at FIG, one of the largest independent marketing organizations ("IMOs") in the country, on or around January 15, 2018, after working as an independent contractor for FIG since April 1, 2017.  As a Senior Vice President, Gentry was responsible for creating and retaining new business for FIG, whose customer base is independent insurance agents that sell the products of national insurance carriers to their own customers.

9.     As a condition of his employment, Gentry was required to sign an Employee Confidentiality and Non-Disclosure, Non-Competition, Non-Solicitation, and Assignment of Intellectual Property Rights Agreement (the "Restrictive Covenant Agreement"), which contained purported restrictions attempting to prohibit him from soliciting any of FIG's current or prospective customers while employed by FIG and for two years beyond his employment with FIG.  Upon information and belief, FIG requires all similarly situated employees to sign an agreement similar to the Restrictive Covenant Agreement that Gentry was required to sign.

10.    FIG also offered Gentry a Deferred Compensation Performance Plan Joinder Agreement ("Deferred Compensation Plan"), which included another restrictive covenant that purported to prohibit Gentry from entering into any area of "[b]usiness or any other business substantially similar to that carried on by FIG" for one year beyond his employment with FIG.

11.    In addition, FIG has a practice of requiring its customers to sign agreements incentivizing them to exclusively deal with FIG through its "Elevate program," and provides loans to clients in exchange for repayment by continuing to work exclusively with FIG.

12.    After more than three successful years with FIG, in which Gentry became FIG's top marketer nationwide, Gentry decided to end his employment with FIG on or around August

17

20, 2020. At or around this time, Gentry informed Jim Cooper ("Cooper"), FIG's co-Chief Executive Officer, that Gentry might start his own FMO.

13.     Upon information and belief, FIG viewed any business that Gentry planned to form as unwanted competition and a threat to its business interests, because it had learned firsthand of Gentry's formidable skills, talents, and abilities in helping the country's top financial advisors grow their businesses and achieve greater profitability.

14.     Upon information and belief, shortly after Gentry left FIG, Cooper began communications with upper management of Advisors Excel, the country's largest IMO, with the goal of coming together to shield both Advisors Excel's and FIG's business interests from Gentry's yet-to-be-formed enterprise.

15.     FIG engaged in a coordinated campaign against Gentry, which included among other things sending groundless cease and desist letters to Gentry and changing the locks to Gentry's office in Lawrence, Kansas. Gentry was ultimately barred from accessing his office for nearly two months, and was unable to retrieve his belongings and business equipment that were inside the locked office.

16.     Refusing to be intimidated by FIG's tactics and determined to fulfill his goal of starting his own business, Gentry founded Epik on or around October 9, 2020.

17.     FIG, despite its threat of filing suit against Gentry, did not do so in fall 2020. Instead, in November 2020, FIG entered into a Settlement Agreement ("Settlement Agreement") with Gentry that is at issue in this lawsuit. In the Settlement Agreement, FIG and Gentry agreed that disputes should be resolved informally rather than through expensive and time-consuming litigation. To emphasize that point, the Settlement Agreement contained "*mandatory* steps prior

18

to FIG initiating any lawsuit alleging a violation [sic] this Settlement Agreement." (emphasis added).

18.     These mandatory steps required that if FIG believed Gentry owed it a buyout payment because of his business with a customer, FIG would immediately notify Gentry through counsel.  After being provided with the foregoing notice, Gentry would then have seven days to cure any alleged breach through several predetermined options.  Thereafter, if FIG still reasonably believed that a dispute existed, the Settlement Agreement mandated that "the parties [would] participate in good faith in voluntary, pre-suit mediation with a mutually agreeable certified mediator on a mutually agreeable date."  In addition, the parties agreed to "cooperate in the selection of a certified mediator . . . and to *promptly* schedule mediation." (emphasis added).

19.     One day after the Settlement Agreement was finalized, Gentry received a cease and desist letter from Advisors Excel.  Epik was later sued in state court in Shawnee County, Kansas. As this suit neared its resolution, FIG then sent a letter to Gentry (the "Demand Letter") alleging that Gentry owed it a buyout payment in relation to an individual named Mark Truttman ("Truttman"), and also falsely claiming that Gentry was in a business relationship with another individual named Jeff Juniper ("Juniper").

20.     Gentry promptly responded to the Demand Letter by following the notice-and-cure provisions set out in the Settlement Agreement, electing to disclaim a contract with Truttman pursuant to the procedure set forth in the parties' Settlement Agreement, and further informing FIG that he did not have any business relationship with Juniper.

21.     More than six weeks passed after Gentry's response to the Demand Letter, and Gentry believed that he had heard the last of these allegations from FIG, given that FIG had not promptly requested mediation to resolve any potential lingering dispute over whether any alleged

19

breach had been cured.  Meanwhile, Epik finalized a resolution of Advisors Excel's lawsuit against it in Kansas state court, executing a settlement agreement on or about November 3, 2021, which resulted in the dismissal with prejudice of that matter.

22.     Two days after the Advisors Excel lawsuit was dismissed, FIG reappeared, claiming that Gentry had failed to cure the breach alleged in its September 2021 letter.  Gentry offered to discuss any remaining concerns FIG may have, but he received no response for three months, until FIG sent a letter threatening a potential suit.  Gentry promptly responded, reiterating that he had properly cured and disclaimed any violations of the Settlement Agreement, and reminding FIG of the mandatory steps that it must take before initiating litigation.

23.     For nearly two weeks thereafter, Gentry attempted to set up a mediation between the parties while FIG, on three separate occasions, threatened to file its lawsuit against Gentry unless he either acceded to its demands for a monetary payment or agreed to a rushed mediation date that Gentry's counsel had repeatedly emphasized was not feasible.  Meanwhile, Gentry continued to try to find a date that was mutually agreeable, and again reminded FIG that it could not initiate a lawsuit without the mandatory mediation on a *mutually agreeable* date.

24.     Nonetheless, on April 20, 2022, FIG initiated the present lawsuit in violation of the its obligations under the Settlement Agreement.

25.     Shortly after initiating this lawsuit, FIG sent six letters to five individuals, who FIG alleged were doing business with Gentry.  FIG disguised these communications as document preservation letters, which informed these individuals of the lawsuit against Gentry but which also contained intentionally vague language to implicitly threaten these individuals with legal troubles of their own if they did business with Gentry or Epik.  Upon information and belief, FIG intended

these letters to be vehicles in which to dissuade these individuals from either leaving FIG or doing any business with Gentry or Epik.

26.     Upon information and belief, the coordinated campaign by FIG against Gentry was an attempt by FIG to monopolize the IMO market to the detriment of consumers, to dissuade others to do business with Gentry or Epik, and to use Gentry and Epik as examples of what would happen to any other potential competitors should they attempt to enter the market.

27.     Upon information and belief, FIG continues to coordinate attempts to stifle competition by Gentry and Epik.

FIRST CAUSE OF ACTION
(Breach of Contract)

28.     The allegations in paragraphs 1-27 are hereby realleged and incorporated by reference as if fully set forth herein.

29.     FIG and Gentry are parties to the Settlement Agreement.  At all relevant times, the Settlement Agreement was a valid and enforceable contract.

30.     FIG breached the Settlement Agreement by unreasonably delaying, for more than six weeks, to respond to Gentry's notice of cure in September 2021, rather than promptly cooperating with Gentry to begin the process of initiating the mandatory pre-suit mediation.

31.     FIG again breached the Settlement Agreement by waiting more than three months to respond to Gentry's invitation to discuss any potential concerns FIG may have still had and instead, immediately threatened to file suit against him.

32.     FIG breached the Settlement Agreement yet again and performed its contractual obligations in bad faith when it initiated the present suit against Mr. Gentry in direct violation of the Settlement Agreement's mandatory mediation procedures.

33.    As a direct and proximate result of FIG's multiple breaches of the Settlement Agreement, Gentry has suffered damages in an amount to be determined at trial.

<u>SECOND CAUSE OF ACTION</u>
(Breach of Implied Covenant of Good Faith and Fair Dealing)

34.    The allegations in paragraphs 1-33 are hereby realleged and incorporated by reference as if fully set forth herein.

35.    As a party to the Settlement Agreement, FIG was bound by the covenant of good faith and fair dealing.

36.    Including as set forth above, FIG has breached the covenant of good faith and fair dealing by acting, for its own personal gain, to deprive Gentry of his right to receive the benefits of the Settlement Agreement and to deprive the Gentry of the fruits of his bargain, including by acting with willful and wanton disregard of Gentry's rights under the Settlement Agreement.

37.    As a direct and proximate result of FIG's breaches of the implied covenant of good faith and fair dealing, Gentry has been damaged in an amount to be determined at trial.

<u>THIRD CAUSE OF ACTION</u>
(Attempted Monopolization in Violation of § 2 of the Sherman Act (15 U.S.C. §§ 1-38))

38.    The allegations in paragraphs 1-37 are hereby realleged and incorporated by reference as if fully set forth herein.

39.    FIG attempted to monopolize the national IMO market by intentionally using the legal process, rather than the outcome of the competitive process, as an anticompetitive weapon as part of a broader campaign to exclude Gentry and Epik from the relevant market.

40.    In addition to Epik and companies such as Signal Advisors USA, Inc., Gradient, Impact Partnership, and Creative One, the relevant market includes any competitors that offer

products similar to those that FIG sells to independent insurance agents from national insurance carriers. However, the relevant market can be more sufficiently defined after discovery.

41.    The exclusion of Gentry and Epik would result in harm to the entire IMO market by reducing the number of competitors from which a consumer could choose, decreasing innovation, and increasing the likelihood that FIG will engage in future anti-competitive behavior with less regard for the market's health.

42.    FIG's anti-competitive conduct has culminated in its baseless lawsuit. Its larger overall scheme to monopolize the relevant market is evidenced by facts including coordination between Cooper and FIG's competitor Advisors Excel; FIG locking Gentry out of his office for nearly two months; FIG's common practice of locking down its new employees with overreaching restrictive covenant agreements; overly burdensome agreements with advisors; and communications to Gentry's counsel, in which FIG threatened to "prosecute its claims aggressively including, but not limited to, issuing third-party subpoenas to other *suspected* 'Buyout Customers' and agencies." (emphasis added).

43.    This baseless litigation, coupled with this and other external conduct to be shown through discovery and at trial, constitutes an unlawful attempt to monopolize the relevant market without any basis in efficiency, superior product, or business acumen, was not a legitimate exercise of FIG's rights to enforce the Settlement Agreement, and constitutes a violation of § 2 of the Sherman Act (15 U.S.C. §§ 1-38).

44.    If FIG succeeds in its attempt to drive Gentry and Epik out of the market, it would prove its ability to exclude competition and would subsequently achieve a substantial degree of monopoly power in the relevant market. Subsequently, FIG would have the ability to acquire all

23

of Gentry and Epik's current and potential customers, which would provide it with more market power, and thus a greater ability to control its prices.

45.     FIG has caused Gentry and Epik significant harm through its attempted monopolization, which includes, but is not limited to, incurring substantial attorneys' fees and expenses and a loss of the valuable time of Epik's employees who were required to assist its attorneys in defending against this baseless litigation.  In addition, Epik has suffered harm by being barred from fully competing in the relevant market, being exposed to the danger that it may be required to share its business plan, employee and customer lists, and its method of operating with its rival, being required to use its financial resources to defend against this strike suit, and delaying Epik's full entry into the market for months.

46.     Upon information and belief, FIG's behavior toward Gentry and Epik is simply one example of what appears to be FIG's practice of using threatened and actual litigation to attempt to damage competitors or completely bar them from the market.

47.     Upon information and belief, FIG had no legitimate expectation that its litigation would actually result in its requested relief, because FIG knew that bypassing its pre-litigation dispute resolution obligations - which were designed to prevent the very act FIG was undertaking - and hastening to prematurely initiate litigation would constitute a breach of the Settlement Agreement.

48.     As a direct and proximate result of FIG's violation of the Sherman Act as set forth herein, Gentry and Epik have been damaged in an amount to be determined at trial.

<u>FOURTH CAUSE OF ACTION</u>
(Unfair and Deceptive Trade Practices)

49.     The allegations in paragraphs 1-48 are hereby realleged and incorporated by reference as if fully set forth herein.

24

50.     N.C. Gen. Stat. §§ 75-1.1 and 75-2.1 mirror the language of the Sherman Act, and provide in pertinent part that "[u]nfair methods of competition in or affecting commerce . . . are declared unlawful" and that "[i]t is unlawful for any person to . . . attempt to monopolize . . . any part of trade or commerce in the State of North Carolina."

51.     At all relevant times, FIG was engaged in commerce in the State of North Carolina, and its activities were in and affecting commerce within the State of North Carolina.

52.     FIG's actions by and through its owner, Cooper, to collude with FIG's largest competitor to use the litigation process to discourage unwanted competition in the relevant market, constitute an unfair practice and an unfair method of competition pursuant to N.C. Gen. Stat. §§ 75-1.1 and 75-2.1.

53.     The aforementioned conduct of FIG, by and through its officers, employees, and agents, constitutes unfair and deceptive trade practices in and affecting commerce in the State of North Carolina, in violation of N.C. Gen. Stat. §§ 75-1.1 and 75-2.1, and tends to injure consumers of financial services by unduly restricting competition.

54.     FIG's actions have directly and proximately caused actual injury to Epik and Gentry in an amount to be determined at trial, including without limitation requiring them to expend needless attorney's fees, hindering their ability to compete in the IMO market, and causing unreasonable delay in resolving FIG's claims of alleged breach of the Settlement Agreement.

55.     Gentry and Epik are entitled to have and recover from FIG compensatory damages by reason of the aforementioned unfair and deceptive trade practices, are entitled to have such damages trebled pursuant to N.C. Gen. Stat. § 75-16, and are entitled to recover their costs and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1, together with interest as by law provided.

(Abuse of Process)

56.     The allegations in paragraphs 1-55 are hereby realleged and incorporated by reference as if fully set forth herein.

57.     FIG had ulterior motives for bringing this lawsuit, which were to attempt to coerce others from lawfully doing business with Gentry and Epik, and to otherwise impede the ability of Gentry and Epik to compete in the referenced industry.

58.     Upon information and belief, the foregoing illusory document preservation letters were sent by FIG for the purpose of gaining an advantage over Gentry and Epik with respect to a collateral matter; namely, coercing others from lawfully doing business with Gentry and Epik, and to otherwise impede the ability of Gentry and Epik to compete in the referenced industry.  Under the circumstances alleged in these Counterclaims, the provision of the referenced illusory document preservation letters, and the content thereof, was not proper in the regular prosecution of a proceeding.

59.     Upon information and belief, FIG knowingly breached the Settlement Agreement's mandatory pre-suit mediation process in furtherance of these collateral purposes.

60.     As further evidence of FIG's improper ulterior motive, upon information and belief, Cooper sought to coordinate litigation efforts with Advisors Excel, with the result of forcing Gentry to fight litigation on two fronts to expend his time and resources more quickly and to further distract him from his new business.

61.     FIG's efforts were intended to be, and were in fact well beyond, any legal rights it possessed under the Settlement Agreement.

62.     As a result of FIG's abuse of process, Gentry and Epik have suffered injury, including but not limited to, lost investment opportunities, and/or payment of fees and costs related

to defense of the lawsuit brought for an improper purpose, which resulted in damages in an amount in excess of $25,000 and to be proven at trial.

**WHEREFORE**, having fully answered Plaintiff's Complaint and asserted Counterclaims as set forth hereinabove, Defendants pray for judgment as follows:

1. That FIG have and recover nothing by way of its Complaint;

2. That FIG's Complaint be dismissed with prejudice;

3. That Gentry and Epik have and recover compensatory and other damages on their Counterclaims, with interest thereon, for all injury caused by Plaintiff in an amount according to proof at trial;

4. That Gentry and Epik have and recover damages under the Fourth Cause of Action of their Counterclaims, with interest thereon, and that such damages be trebled pursuant to N.C. Gen. Stat. § 75 16;

5. For their costs and attorneys' fees pursuant to N.C. Gen. Stat. § 1D-45, and as may otherwise be allowed by the Court; and

6. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Defendants demand a trial by jury of all issues so triable.

Respectfully submitted, this the 12th day of July, 2022.

s/ C. Grainger Pierce, Jr.
C. Grainger Pierce, Jr., N.C. Bar No. 27305
s/ G. Bryan Adams, III
G. Bryan Adams, III, N.C. Bar No. 17307
VAN HOY, REUTLINGER, ADAMS & PIERCE, PLLC
737 East Boulevard
Charlotte, NC 28203
Telephone: (704) 375-6022
Facsimile: (704) 375-6024
E-mail: grainger.pierce@vraplaw.com
        bryan.adams@vraplaw.com
Attorneys for Defendants


Of Counsel:

s/ J. Eric Weslander (admitted *pro hac vice*)
STEVENS & BRAND, LLP
900 Massachusetts Street, Suite 500
P.O. Box 189
Lawrence, Kansas 66044
Telephone: (785) 843-0811
Facsimile: (785) 843-0341
E-mail: eweslander@stevensbrand.com
Attorney for Defendants